OPINION OF THE COURT
Martin Schneier, J.
The primary issue presented in this Real Property Actions and Proceedings Law article 14, nonjudicial commercial foreclosure proceeding is, should the court allow the foreclosure to proceed or should the court require that the foreclosure proceed only as a judicial foreclosure pursuant to RPAPL article 13 because the statutory standard, “that under the facts and circumstances, allowing the foreclosure to proceed under this article would cause an undue hardship to the mortgagor” (RPAPL 1421 [2] [b] [5]), mandates it in this case? What criteria should be used in delineating the statutory definition of “an undue hardship?” The statute is silent in this regard and there are no appellate decisions to give guidance to the court. This appears to be an issue of first impression in this state.
This is a nonjudicial commercial foreclosure proceeding pursuant to article 14 of the Real Property Actions and Proceedings Law. Defendant, Dragonhearth Realty, LLC moves pursuant to RPAPL 1421 (2) (b) (5) to convert the pending RPAPL article 14 nonjudicial foreclosure proceeding to an RPAPL article 13 judicial foreclosure proceeding.
Background
On March 3, 2008 Dragonhearth acquired title to the premises, located in the Red Hook section of Brooklyn and designated as block 589, lots 1, 7, 9, 11, 12 and 16, and known as 151/161 Dwight Street, 17 Dwight Street, 40 Otsego Street and 60 Otsego Street (the premises). The premises consist of six separate vacant lots which were purchased with the intent of developing the premises for commercial use.
The $7.5 million Dragonhearth paid for the premises was partially financed by a one-year loan of $3.6 million from plaintiffs, Approved Financial Corp. and Gemcap Equity Corp. (lenders), with interest at the rate of 15% per annum as evidenced by a promissory note which was secured by a mortgage covering the premises."As set forth in the mortgage, Approved Financial Corp. is the agent for the lender.
The note required monthly interest payments commencing on April 3, 2008 with the entire principal due on March 3, 2009.
*483 It is undisputed that Dragonhearth paid the scheduled monthly payments of interest commencing on April 3, 2008 through January 1, 2009 and in addition, paid principal of $1,381,846.70 thus, reducing the outstanding principal balance owed to plaintiff on June 29, 2009 to $2,218,153.30.
As a result thereof, the lenders have issued a partial release of the mortgaged premises, releasing block 589, lot 11 on July 9, 2008 and releasing block 589, lot 7 on September 30, 2008.
It is also undisputed that Dragonhearth has failed to pay the scheduled monthly payments of $27,726.92 due under the note commencing on February 1, 2009 and continuing each and every month thereafter to date.
Plaintiff, Approved Financial Corp., in its capacity as agent for the lenders, commenced this nonjudicial foreclosure proceeding pursuant to RPAPL article 14 upon the filing of “Notice of Intention To Foreclose” and a “Notice Of Pendency In A NonJudicial Foreclosure Proceeding Pursuant to RPAPL Article 14” on June 30, 2009.
Dragonhearth, as the mortgagor, on August 1, 2009, filed the instant motion pursuant to RPAPL 1421 seeking to convert this RPAPL article 14 nonjudicial foreclosure proceeding to an RPAPL article 13 judicial foreclosure proceeding.
Discussion
In 1998 the New York State Legislature enacted Real Property Actions and Proceedings Law article 14, “Foreclosure of Mortgage by Power of Sale,” which permits foreclosure of commercial mortgages by an accelerated expedited nonjudicial proceeding.
The legislation enacting Real Property Actions and Proceedings Law article 14, as amended by Laws of 2005, chapter 123, § 1, provides in relevant part that
“[t]his act shall take effect immediately and shall remain in full force and effect until July 1, 2009, when, upon such date, article 14 of the real property actions and proceedings law, as added by this act, shall be deemed repealed, but shall apply to any non-judicial proceeding in which the notice of pendency has been filed on or before such date.” *484 “[i]f the mortgagee commences proceedings under this article to foreclose a mortgage, or extension, amendment, modification or consolidation thereof, executed after the effective date of this article, the mortgagor, not later than forty days after the date it receives the notice of intention to foreclose as provided in this article, may apply, by order to show cause, to the supreme court in the county in which the mortgaged property is located for an order directing that further proceedings be conducted pursuant to article thirteen of this chapter, and for a temporary restraining order staying further proceedings under this article pending a hearing of the application. The application shall include one or more affidavits (a) stating whether a previous application for the same or similar relief has been made, and if so the outcome thereof, and (b) stating facts to support one or more of the following allegations . . .
*483 Since the instant notice of pendency and notice of intention to foreclose were both filed on June 30, 2009 this nonjudicial foreclosure proceeding is timely commenced.
RPAPL 1421 (2) states in relevant part that
*484 “(5) that under the facts and circumstances, allowing the foreclosure to proceed under this article would cause an undue hardship to the mortgagor.”
Dragonhearth’s primary argument is that proceeding under RPAPL article 14, “under the facts and circumstances ‘herein’ would cause an undue hardship to the mortgagor,” Dragon-hearth.
Dragonhearth in its affidavit in support of the motion avers in relevant part that
“8. Dragonhearth Realty is currently attempting to obtain new financing in order to satisfy the plaintiffs mortgage. By permitting the non-judicial foreclosure to proceed, defendant Dragonhearth Realty will be unable to refinance, and will not be able to satisfy the mortgage in full. Moreover, defendant will certainly lose the substantial equity already invested in the premises.
“9. Plaintiff will not be prejudiced by such a request. The subject premises were purchased just over one (1) year ago for $7.5 million . . . there is a sufficient equity such that in the unlikely event defendant is unable to obtain refinancing, the plaintiff will still recoup all the sums which may be due and owing.”
Dragonhearth in its reply affidavit avers in relevant part that
“3. Since the filing of defendants’ Order to Show Cause, the subdivision of the property has been approved by the City. Defendants’ architect, Henry *485 Radutsky, AIA at Bricolage Decisions has already gotten oral approval of the plans from the Building Department, but since final written approval could not be granted until separate tax lots had been allotted delays had occurred. A survey was performed and filed, the individual Tax Lots (18) have been assigned Tax numbers and the plans have now been resubmitted for formal approval with the DOB. Now that the separate tax lots have been approved, I am awaiting approval of the plans from the Building Department, which should be within the next 30-60 days depending upon the backlog at the Department of Buildings.
“4. Once such approval is obtained it will be easier for potential purchasers to obtain bank financing on individual units instead of bulk lots of 10-2500 sq. ft., therefore allowing me to sell the subject property in smaller lots, and satisfy the plaintiff’s mortgage. Similarly, it will be easier for defendant to refinance the underlying obligations.”
Dragonhearth’s attorney’s affirmation submitted in support of the motion avers in relevant part that
“11. . . . Defendant has demonstrated that permitting the non-judicial foreclosure to proceed would cause an undue hardship. Similarly, it has been demonstrated that defendant will suffer irreparable injury if the plaintiff is allowed to pursue a nonjudicial foreclosure.
“12. A balancing of the equities also favors the preliminary injunction. Defendant has proceeded in good faith, has paid down a substantial portion of the principal balance, and faces the loss of his entire investment should the foreclosure be allowed to proceed.”
Plaintiffs main argument in opposition to the motion is that
“Dragonhearth has not and cannot satisfy any of the requisite conditions under RPAPL Section 1421.”
Plaintiffs attorney’s affirmation submitted in opposition to the motion avers in relevant part that
“22. Most critically, Dragonhearth has failed to demonstrate with any reasonable certainty that it is in a position to avoid any such ‘undue hardship’ as a result of any additional time afforded in a judicial foreclosure proceeding....
“26. As shown above, Dragonhearth has wholly *486 failed to provide the predicate facts upon which to reasonably conclude that a conversion of this action to an RPAPL Article 13 foreclosure proceeding will result in the avoidance of an ‘undue hardship.’ Accordingly, Dragonhearth’s motion to convert this matter to a judicial foreclosure pursuant to Section 1421 (5) must be denied.”
The determination of this motion requires a delicate balancing of all of the equities.
The court notes that Dragonhearth is not an “underwater” mortgagor as many nowadays are and has acted in good faith by timely paying the monthly interest on this 12-month, $3.6 million, 15% interest loan for 10 months, from April 2008 to January 2009, and also has paid back nearly $1.4 million of principal with a principal balance now due plaintiff of only approximately $2.2 million. Since the purchase price of the premises was $7.5 million, it would seem that plaintiffs equity in the premises together with the 15% interest is secure.
In addition, the court is aware that the Brooklyn Red Hook section where the premises consisting of six vacant lots is located has undergone a renaissance with gentrification occurring and is a neighborhood in flux as evidenced by the recent successful openings of the new Fairway Super Market and the large IKEA mega store which opened on June 18, 2008. The last remaining transatlantic ocean liner, the 2,620-passenger Queen Mary 2, docks exclusively at the Red Hook Brooklyn Cruise Terminal, Pier 62, when she visits New York. Real estate values have apparently steadily increased during the past few years.
In sum, the court finds that under the facts and circumstances of the case plaintiff will not be prejudiced by the RPAPL article 13 judicial foreclosure and that proceeding with the RPAPL article 14 nonjudicial foreclosure would cause “undue hardship” to the mortgagor Dragonhearth.
In light of the court’s determination, Dragonhearth’s remaining contentions need not be addressed.
Conclusion
Based on the foregoing, Dragonhearth’s motion is granted. The temporary restraining order is continued and the RPAPL article 14 nonjudicial foreclosure is converted to an RPAPL article 13 judicial foreclosure proceeding.